## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| BRITTANY ALON, JASMINE THOMAS, ANA RAMOS, MEGAN EFSEAFF, SARA KIPP, KEVIN DANIELS, JENNIFER ROTHROCK, ELIZABETH HILTON, CHELSEA MANNION VANESSA TORTORA, individually and on behalf of similarly situated students, | ) ) ) ) ) ) ) | CAUSE NO.:  1:24-cv-0334 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | JUDGE: |
| UNION INSTITUTE AND UNIVERSITY, EDGAR L. SMITH, JR., DR. JEFFREY M. SHEPARD, DONALD FELDMAN, ROGER ALLBEE, KAREN BIESTMAN, DR. GLADYS GOSSET HANKINS, DR. EDWIN C. MARSHALL, CHRISTINE VAN DUELMAN, AND DR. KAREN SCHUSTER WEBB, | ) ) ) ) ) ) ) ) ) | PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendants. | ) | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, by counsel, allege against Defendants as follows:

### I.     PARTIES

1.      Plaintiffs, Brittany Alon, Ana Ramos, Jasmine Thomas, Rebecca White, Megan Efseaff, Kevin Daniels, Sara Kipp, Elizabeth Hilton, Chelsea Mannion, Vanessa Tortora, and Jennifer Rothrock ("Plaintiffs" or "Class Representatives") are or were students at Defendant Union Institute and University ("Defendant Union") located in Cincinnati, Ohio, at all relevant times to this Complaint.

2.      Defendant Union is an Ohio non-profit corporation with a principal place of business in this judicial district.

3.      Defendants Edgar L. Smith, Jr., Jeffrey M. Shepard, Donald Feldmann, Roger Allbee, Karen Biestman, Gladys Gosset Hankins, Edwin C. Marshall, Christine Van Duelman (collectively,

the "Board Defendants") are or were members of the Board of Trustees of Defendant Union, which is the governing body with ultimate oversight of Defendant Union..

4.      Defendant Karen Schuster Webb ("Webb") is the President of Defendant Union.

## II.      INTRODUCTION

5.      The above-named Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated students at Defendant Union.

6.      Defendants subjected Plaintiffs and all other similarly situated students to the same policies and procedures for students attending Defendant Union.

7.      At all relevant times to this Complaint, Defendant Webb was acting in her official capacity as President of Defendant Union.

8.      At all relevant times to this Complaint, Board Defendants were acting in their official capacity as the Board of Trustees for Defendant Union.

9.      Defendants have breached contractual obligations to Plaintiffs in violation of Ohio Common Law.

10.      Defendants are estopped from denying promises made to Plaintiffs under Ohio Common Law.

11.      Defendants are liable for the tortious interferences with Plaintiffs' contracts for the misrepresentations made by Defendants regarding Plaintiffs' education.

12.      Defendants are liable for negligence regarding Plaintiffs' education.

13.      Defendants are liable for negligent misrepresentations made by Defendants regarding Plaintiffs' education.

14.      Defendants are liable for the acts of gross negligent conducted by Defendants' misrepresentations made regarding Plaintiffs' education.

15.     Plaintiffs herein assert their right to relief jointly and severally in that their claims arise out of related transactions and occurrences and arise out of the same questions of law in accordance with Rule 18 of the Federal Rules of Civil Procedure.

16.     Plaintiffs herein assert their right to relief jointly and severally in that the number of Plaintiffs is sufficient to support a class action, their claims are typical on one another, a class action is superior to other methods available for the fair and efficient adjudication of the controversy and that the named Plaintiffs will adequately represent the interest of all class members in accordance with Rule 23 of the Federal Rules of Civil Procedure ("FCRP").

17.     Plaintiffs seek declaratory, injunctive, compensatory, economic, liquidated, punitive and other relief against Defendants to redress violations of Plaintiffs' common law rights.

### III.     JURISDICTION AND VENUE

18.     Plaintiffs bring this action as a class action pursuant to FCRP 23 on behalf of themselves and other members of a class(es) of persons, defined herein, who assert factually related claims pursuant to the Class Action Fairness Act of 2005 ("CAFA") 28 U.S.C § 1332(d)(2)(A).

19.     The amount in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs, and is a class action in which at least one member of Plaintiffs is a citizen of a different state from any Defendant. Plaintiffs have a good faith basis to belief Defendants are insured for at least $5,000,000.00.

20.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(1). Defendant Union's principal place of business is in Cincinnati, Ohio.

### IV.     FACTUAL ALLEGATIONS

21.     On or about July 1, 2018, Defendant Webb was hired as Defendant Union's sixth President since its inception in 1964. At the time of Defendant Webb's hiring, Defendant Union had roughly a $6.3 million budget surplus and a $3 million dollar endowment.

22.     In 2019, after Defendant Webb's first year as President of Defendant Union, the university had a decline in revenue of 20% and posted a $1.7 million loss.

23.     In 2020, Defendant Union's annual losses increased to $2.6 million. An auditor of Defendant Union raised substantial doubts about Defendant Union's ability to continue operating.

24.     In 2021, three years after Defendant Webb took over as President, Defendant Union was forced to sell its headquarters. On or about July 2021, Defendant Union sold the building and additional land for a loss.

25.     COVID-19 allowed Defendant Union to receive $4.1 million in federal grants in 2021 and 2022, compared to the $535,000 in previous years. This boosted 2021's revenue 16%. Despite the boost in revenue, Defendant Union still lost $794,018 for the year.

26.     During Defendant Webb's Presidency, Defendant Union was subject to a 41% decrease in revenue from tuition and fees while program service expenses increased. Defendant Union's total student headcount dropped 36% and the full-time enrollment dropped 69% from 2017 to 2021.

27.     In 2022, Defendant Union lost $539,668. This brought the total losses under Defendant Webb's leadership to $5.6 million. After four years with Defendant Webb as its President, Defendant Union had $5 million less in cash than when she first took over and the endowment dropped to only $2.1 million.

28.     On or about April of 2022, Defendant Union established a line of credit with Fifth Third Bank in 2022 that had to be paid off by January of 2023. Plaintiffs do not know the status of this loan.

29.     Board Defendants oversee all operations at Defendant Union, including Defendant Union's finances, fiscal responsibility, payroll practices, policies, and procedures, and the job

performance of Defendant Webb. Defendant Webb is the President of Defendant Union and oversees the agenda of Board Defendants.

30.     In June 2023, faculty and staff at Defendant Union took a vote of no confidence regarding Defendant Webb. Board Defendants took no corrective action.

31.     On or about August 14, 2023, Defendant Union sent an email indicating a "UI&U Sustainability and Revitalization Team" was created to assist the university in "crisis management decision-making of the university and enhance the communication and information sharing between administration, faculty, staff, and students."

32.     On or about August 24, 2023, Defendant Union sent an email to Plaintiffs indicating classes for Fall One Semester classes were postponed and would resume on September 11, 2023. Defendant Union also indicated Fall Two Semester Classes would begin on November 6, 2023. Plaintiffs relied on these representations by Defendant Union.

33.     Additionally, Plaintiffs have become aware that in August of 2023, the University of Cincinnati reached out to Defendant Union about a possible partnership and/or teach-out opportunity for students. This gracious opportunity from the University of Cincinnati included expedited and mid-semester admission and fee waivers. However, Defendants did not engage in negotiations with the University of Cincinnati.

34.     On or about August 28, 2023, Defendant Union sent Plaintiffs an email indicating it was not too late for students to purchase books for the semester. Plaintiffs relied on this representation from Defendant Union that the university would not cancel classes.

35.     On or about September 6, 2023, Defendant Webb, in her capacity as President of Defendant Union, held a town hall event to discuss Defendant Union's next steps.

36.     On or about September 7, 2023, the Higher Learning Commission designated Defendant Union in financial distress. A true and accurate copy of the Public Notice of Financial

Distress by the Higher Learning Commission (the "Public Notice") is attached hereto, incorporated herein, and marked as **Exhibit "A"**. The Public Notice states a "focused visit" was scheduled for October 23, 2023, where the Higher Learning Commission would determine the fate of Defendant Union's accreditation status. Ex. A.

37.     On or about September 8, 2023, Defendant Union sent an email indicating Fall One Semester was cancelled. Further, Defendant Union indicated Fall Two Semester classes would still occur. Specifically, Defendant Union stated:

> Union pledges to take care of each of its students. It is our intent to continue your program during Fall 2 into future terms. Be assured that all registered students will be able to complete their programs. We ask for your continued patience and respect. Your hard work and dedication will be recognized and honored.

Plaintiffs relied on this representation by Defendant Union by not transferring to other schools. Defendants knew Plaintiffs would rely on their representation.

38.     On or about September 27, 2023, Vice President of Academic Affairs, Tom Federick, held a town hall meeting to discuss Defendant Union's situation with students and faculty.

39.     On or about October 3, 2023, a letter containing the signature of more than fifty (50) doctoral students at Defendant Union called for the resignation of Defendant Webb and the replacement of Board Defendants. The letter requested that Defendant Webb resign due to her creation of and subsequent failure to address the financial crisis, transparency and empathy toward everyone effected by Defendants' actions. Defendant Webb and Board Defendants are currently still affiliated with Defendant Union.

40.     On or about October 23, 2023, the Higher Learning Commissions conducted its "focused visit" to determine whether Defendant Union's accreditation will be revoked.[1] The Higher

---

[1] Plaintiffs are unaware of any official ruling by the Higher Learning Commission regarding the status of Defendant Union's accreditation at this time; however, Plaintiffs have a good faith basis to believe a second visit by the Higher Learning Commission took place in March or April of 2024.

Education's visit came approximately four (4) to five (5) years before Defendant Union was up for reaffirmation of accreditation. A true and accurate copy of the Reaffirmation Action Letter to Defendant Union on May 5, 2017, is attached hereto, incorporated herein, and marked as **Exhibit "B"**.

41.    On or about November 1, 2023, Defendant Union sent an email to Plaintiffs indicating Fall Two Semester for undergraduates and master's programs were cancelled, but that courses would resume in January. Fall One Semester and Fall Two Semester classes never occurred. However, many Professors refused to abandon their students and continued to teach several classes across multiple programs.

42.    On or about November 7, 2023, the United States Department of Education ("DOE") sent a letter to Defendant Webb indicating the DOE was instituting an emergency action to terminate Defendant Union's eligibility to participate in Title IV programs. A true and accurate copy of the DOE letter to Defendant Webb is attached hereto, incorporated herein and marked as **Exhibit "C"**.

43.    By information and belief, Plaintiffs assert that Defendants received funds for Plaintiffs' tuition and that Defendants did not distribute the amount in excess of tuition to each Plaintiff, as required by federal law. Ex. C at 2.

44.    The DOE stated, "on August 8, 2023, [Defendant Union] identified a total of $753,374 in outstanding Title IV credit balances that were owed to 157 students." Ex. C at 4.[2] These funds, and others, were due to Plaintiffs from May 2023 to August 2023. Ex. C at 4.

45.    Defendants' unlawful actions not only affect those with federal student loans but also many Plaintiffs with private student loans who did not receive the refund owed to them for loans in excess of tuition.

---

[2] The DOE letter states there are 390 students entitled to Title IV program credit balances and only 50 students were paid their credit balances.

46. On or about November 2023, Defendant Union indicated it would use November and December to reorganize and restructure to "Become a Better Union."

47. The cancellation of both Fall One and Fall Two Semesters has made Plaintiffs unable to demonstrate their enrollment status with various loan servicing agencies. These loan servicing agencies have notified Plaintiffs that loan payments are due as early as January and interest will begin to accrue on subsidized loans.

48. On or about December 2023, Defendant Union indicated a teach-out program with various universities was available to students. Defendant Union assured students that the universities would accept all their credit hours to date. However, many Plaintiffs have indicated that is not true. Many Plaintiffs will be required to retake courses already completed at Defendant Union. Further, many Plaintiffs were denied access to financial aid for the teach-out programs due to the status of their loans with Defendant Union. These Plaintiffs are forced to pay out-of-pocket or take out private loans at an interest rate greatly exceeding that of federal loans, to finish their degree.

49. Many Plaintiffs have yet to receive their Diplomas from Defendant Union as they have not met the required credit hours. Many Plaintiffs have not been able to finish their schooling by December, as originally planned and are now forced to graduate several months later, if at all.

50. Many Plaintiffs are unable to receive transcripts from Defendant Union to apply to other schools or apply for graduate schools.

51. Many Plaintiffs have been forced to put post-graduate jobs on hold until they graduate, which could potentially span into next fall or later. Many Plaintiffs have lost job opportunities. Many Plaintiffs have lost money they paid out of pocket for tuition at Defendant Union. The entire situation Defendants have put Plaintiffs into has caused severe emotional distress that have many students wondering if they will ever get their degree, if their degree will be worth anything after the DOE

investigation concludes, and uncertainty as to where they will finish their educations. Many Plaintiffs have been living in agony waiting for what the future might hold for them and their families.

52.     As a result of the Defendants actions, Plaintiffs have suffered numerous injuries, which include but are not limited to lost opportunities, emotional pain and suffering, psychological pain and suffering and substantial monetary injury.

## V.     CLASS ACTION ALLEGATIONS

53.     Plaintiffs incorporate paragraphs 1 through 52 by reference herein.

54.     Plaintiffs bring this action under various state law claims as a class action pursuant to Rule 23 of the FRCP on behalf of the following defined class:

> All persons who are or were students at Union Institute and University from January 1, 2023, to the present who have been adversely affected by the university's actions that have caused the university to be in financial trouble.

(the "Student Class").

55.     Plaintiffs bring this action under various state law claims as a class action pursuant to Rule 23 of the FRCP on behalf of the following defined subclass of the Student Class:

> All persons who are or were students at Union Institute and University from January 1, 2023, to the present who are involved in teach-out programs not accepting all of Defendant Unions credits.

(the "Teach-out Class #1").

56.     Plaintiffs bring this action under various state law claims as a class action pursuant to Rule 23 of the FRCP on behalf of the following defined subclass of the Student Class:

> All persons who are or were students at Union Institute and University from January 1, 2023, to the present who are involved in teach-out programs not providing financial aid.

(the "Teach-out Class #2").

57.     Plaintiffs bring this action under various state law claims as a class action pursuant to Rule 23 of the FRCP on behalf of the following defined subclass of the Student Class:

> All persons who are or were students at Union Institute and University from January 1, 2023, to the present who have not received their diploma after graduation.

(the "Diploma Class").

58. Plaintiffs bring this action under various state law claims as a class action pursuant to Rule 23 of the FRCP on behalf of the following defined subclass of the Student Class:

> All persons who are or were students at Union Institute and University from January 1, 2023, to the present who have not received their transcript after requesting and paying for one.

(the "Transcript Class").

59. <u>Numerosity</u>: Upon information and belief, the proposed Student Class, Teach-out Class # 1, Teach-out Class # 2, Diploma Class and Transcript Class ("Student Class and subclasses") are so numerous that joinder of all members is impractical. The Class Representatives are informed and believe, and on that basis allege, that during the applicable statutory period, Defendants have over 100 people who satisfy the definition of the proposed Student Class and subclasses.

60. <u>Typicality</u>: The Class Representative's claims are typical of the members of the Student Class and subclasses. The Student Class and subclasses are similarly situated students suffering from similar damages due to Defendants' actions causing them to not receive reimbursement for loans in excess of tuition and/or having difficulty providing proof of enrollment to loan servicing agencies, having to retake classes or being required to take additional classes at the teach-out universities, never receiving their diploma after graduating and never receiving their transcript after requesting and paying for one to apply to new schools and/or graduate programs.

61. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in each of the Plaintiffs' causes of action where individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against the Defendants.

62.     Adequacy: The Class Representatives will fairly and adequately protect the interests of the Student Class and subclasses and have retained counsel experienced in collective and/or class action litigation.

63.     Commonality: Common questions of law and fact exist to all members of the Student Class and subclasses and predominate over any questions solely affecting individual members of the Student Class and subclasses, including but not limited to:

     a.  Whether Defendants breached their contractual obligations to the Student Class and subclasses by failing to provide reimbursement for funds received in excess of the cost of tuition, their diploma after graduating and their transcript after requesting one to apply to new schools and/or graduate programs;

     b.  Whether Defendants are estopped from denying the Student Class and subclasses reimbursement for funds received in excess of the cost of tuition, adequate teach-out opportunities to finish their degrees, their diploma after graduating and their transcript after requesting one to apply to new schools and/or graduate programs;

     c.  Whether Defendants tortiously interfered with the contracts entered into with the Student Class and subclasses by demonstrating a conscious disregard for the rights of the Student Class and subclasses which disregarded the great probability of causing substantial harm to them;

     d.  Whether Defendants negligently misrepresented that classes would resume, reimbursements for funds in excess of tuition would be provided, adequate teach-out opportunities accepting all of the members of the Student Class and subclasses credits and that diplomas and transcripts would be provided demonstrating a conscious disregard for the rights of the Student Class and subclasses and that disregard had a great probability of causing substantial harm to them; and

e. Whether Defendants committed gross negligent conduct by representing to the Student Class and subclasses that classes would resume, reimbursements for funds in excess of tuition would be provided, adequate teach-out opportunities accepting all of the Student Class and subclass members credits and that diplomas and transcripts would be provided demonstrating a conscious disregard for the rights of the Student Class and subclasses and that disregard had a great probability of causing substantial harm to them; and

f. Whether Defendants committed negligence by failing to provide diplomas and transcripts to the members of the Student Class and subclasses.

64. This matter is maintainable as a class action under Rule 23(b)(1) of the FRCP. Prosecution of actions by individual members of the Student Class and subclasses would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

65. Class certification is also appropriate under Rule 23(b)(2) of the FRCP. Defendants have refused to act on grounds that apply generally to the class and final injunctive relief or corresponding declaratory relief is appropriate respecting the Student Class and subclasses as a whole.

66. Further, Student Class and the subclasses certification is also appropriate under Rule 23(b)(3) of the FRCP. Questions of law and fact common to the Student Class and subclasses predominate over any questions affecting individual members of the Student Class and subclasses. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform actions denied Student Class reimbursement for funds received in excess of tuition, to which the Student Class was entitled to. Defendants' common and uniform actions denied Teach-out Class # 1 the full extent of the credits the class members are entitled to. Defendants' common and uniform actions denied Teach-out Class # 2 the benefit of receiving

financial aid from schools Defendants have teach-out agreements with. Defendants' common and uniform actions denied the Diploma Class the benefit of receiving their diploma after graduating from Defendant Union. Defendants' common and uniform actions denied the Transcript Class from receiving transcripts after requests were submitted in order to apply to different schools and/or graduate schools. The damages suffered by the individual members of the Student Class and subclasses are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior as class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' actions.

67.     Plaintiffs intend to send notice to all members of the Student Class and subclasses to the extent required by Rule 23 of the FRCP.

68.     Defendants willfully engaged in a pattern of violating Federal and State law as described in this Complaint by failing to provide reimbursements for funds Defendants received from Class members in excess of tuition, failing to provide adequate teach-out opportunities for the Student Class and subclasses, never providing members of the Student Class and subclasses with their diploma after graduating and never providing members of the Student Class and subclasses with their transcript after requesting and paying for one to apply to new schools and/or graduate programs, for which members of the Student Class and subclasses are entitled to.

## VI.     STUDENT CLASS CLAIMS

## COUNT ONE: BREACH OF CONTRACT

69.     Student Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

70.     Student Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Student Class Plaintiffs education at Defendant Union.

71.     Upon acceptance of the contracts by both Student Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

72.     Student Class Plaintiffs filled out Free Applications for Federal Student Aid ("FAFSA") to receive the benefit of an education from Defendant Union through federal loans. Many Student Class Plaintiffs filled out applications for private student loans. Many Student Class Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Student Class Plaintiff has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

73.     Under the terms of the contract between Student Class Plaintiffs and Defendant Union, any funds received in excess of tuition is to be reimbursed to Student Class Plaintiffs to assist in paying living expenses. Defendants used these funds to pay for Defendant Union's other debt.

74.     Since at least May of 2023, Defendant Union has failed to fulfill its obligations under the contract requiring them to provide each Student Class Plaintiff with an education. Many Student Class Plaintiffs have not received any education since at least August 2023 nor any reimbursement from Defendants. The Student Class Plaintiffs who received their reimbursement received it late by several weeks.[3] Many Student Class Plaintiffs paid tuition out-of-pocket and have not received an education.

75.     Since Defendant Union breached their contract with Student Class Plaintiffs, Student Class Plaintiffs have been unable to prove their student status with loan servicing agencies. Many Student Class Plaintiffs now have money added to their loans that paid for an education they never received, causing financial harm to Student Class Plaintiffs. Many Student Class Plaintiffs have lost out-of-pocket payments.

76.     Due to Defendant Union's breach of the contract and Defendants usage of Student Class Plaintiffs fund to pay for other debts of Defendant Union, Student Class Plaintiffs seek

---

[3] Exhibit C states 50 of the 390 students who received federal loans were paid late.

declaratory and injunctive relief requiring Defendants to pay Student Class Plaintiffs back the money provided to them since May of 2023 for the benefit of providing a college education.

**COUNT TWO: PROMISSORY ESTOPPEL**

77.     Student Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

78.     Student Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Student Class Plaintiffs education at Defendant Union.

79.     Upon acceptance of the contracts by both Student Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

80.     Student Class Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Student Class Plaintiffs filled out applications for private student loans. Many Student Class Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Many Student Class Plaintiffs paid out-of-pocket for classes that were never taught. Each Student Class Plaintiff has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

81.     Under the terms of the contract between Student Class Plaintiffs and Defendant Union, any funds received in excess of tuition is to be reimbursed to Student Class Plaintiffs to assist in paying living expenses. Defendants used these funds to pay for Defendant Union's other debts.

82.     Since at least May of 2023, Defendant Union has failed to fulfill their obligations under the contract requiring them to provide each Student Class Plaintiff with an education. Many Student Class Plaintiffs have not received any education since at least August 2023 nor any reimbursement from Defendant Union. The Student Class Plaintiffs who received their reimbursement received it late by several weeks.

83.     On or about August 24, 2023, Student Class Plaintiffs were notified by Defendant Union that classes for Fall One Semester classes were postponed and would resume on September

11, 2023. Further, Defendant Union indicated Fall Two Semester Classes would begin on November 6, 2023. Student Class Plaintiffs relied on these representations by Defendants.

84.     On or about September 8, 2023, Student Class Plaintiffs received an email indicating Fall One Semester Classes were cancelled.

85.     On or about November 1, 2023, Student Class Plaintiffs received an email indicating Fall Two Semester classes were cancelled.

86.     Student Class Plaintiffs detrimentally relied on Defendant Union's continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Student Class Plaintiffs' reliance was going to occur based on their representations that classes would resume and reimbursements would be sent to each Student Class Plaintiff.

87.     Many Student Class Plaintiffs never received their reimbursement for student loans paid to Defendant Union in excess of tuition because Defendants used the funds to pay for Defendant Union's other debts. Many Student Class Plaintiffs who paid out-of-pocket have never received refunds.

88.     Since Defendant Union has breached their contract with Student Class Plaintiffs, Student Class Plaintiffs have been unable to prove their student status with loan servicing agencies. Many Student Class Plaintiffs have money added to their loans that paid for an education they never received and that include reimbursement amounts in excess of tuition that never came, causing significant financial harm to Student Class Plaintiffs.

89.     Defendants have caused financial harm to Student Class Plaintiffs.

90.     Due to Defendant Union's breach of the contract and Defendants use of Student Class Plaintiffs' funds to pay Defendant Union's other debts, Student Class Plaintiffs seek declaratory and injunctive relief requiring Defendants to pay Student Class Plaintiffs back the money provided to them since May of 2023.

<u>**COUNT THREE: TORTIOUS INTERFERENCE WITH**</u>
<u>**STUDENT CLASS PLAINTIFFS' CONTRACTS**</u>

91.     Student Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

92.     The contract Student Class Plaintiffs and Defendant Union entered into regarding education provided certain obligations each were required to perform. Defendants knew of the contracts between Student Class Plaintiffs and Defendant Union.

93.     On or about August 24, 2023, Defendant Union sent out an email indicating Fall One Semester was going to be delayed until September 11, 2023.

94.     On or about September 8, 2023, Student Class Plaintiffs were notified Fall One Semester classes were cancelled.

95.     Student Class Plaintiffs relied on this information provided by Defendant Union. Student Class Plaintiffs and many others had federal and/or private loans sent to Defendant Union. Many Student Class Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Student Class Plaintiffs relied on these statements by Defendant Union by continuing to wait for classes to begin and for their reimbursements to arrive. The payments by Student Class Plaintiffs to Defendant Union were misappropriated by Defendants to pay for other debts.

96.     Student Class Plaintiffs did not transfer to other schools. Student Class Plaintiffs were told classes were going to start on or about September 11, 2023. When Fall One Semester classes were cancelled, Defendant Union indicated Fall Two Semester classes were still going to take place. Once again, Student Class Plaintiffs did not transfer to other schools. Student Class Plaintiffs were told classes were going to take place.

97.     Plaintiffs' reliance on each of the statements by Defendant Union were soon discovered to be inaccurate, as Student Class Plaintiffs were notified on or about November 1, 2023, that Fall Two Semester classes were not going to take place.

98.    Defendants knew of the statements and did nothing to prevent the disclosure of inaccurate information.

99.    Defendants failed to exercise reasonable care owed to Student Class Plaintiffs in obtaining or communicating accurate information regarding classes. Defendant Union's statements demonstrated a conscious disregard for the rights of Student Class Plaintiffs and had a great probability of causing substantial harm to them.

100.    Student Class Plaintiffs have been substantially harmed by the misrepresentations made by Defendant Union in an ongoing nature as to when classes were going to begin and reimbursements were going to be paid.

101.    Student Class Plaintiffs have been substantially harmed. Student Class Plaintiffs' loan amounts have been added to their loan servicing agencies for classes that were not taught and reimbursements that were not provided. Defendant Union is liable for its misrepresentations.

102.    Student Class Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Union. Defendant Union is liable for its tortious interference with Student Class Plaintiffs' contracts.

103.    Student Class Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Student Class Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Student Class Plaintiffs.

## COUNT FOUR: NEGLIGENT MISREPRESENTATION

104.    Student Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

105.    Student Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Student Class Plaintiffs education at Defendant Union.

106.    Upon acceptance of the contracts by both Student Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

107. Student Class Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendant Union through federal loans. Many Student Class Plaintiffs filled out applications for private student loans. Many Student Class Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Student Class Plaintiff has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

108. Under the terms of the contract between Student Class Plaintiffs and Defendants, any funds received in excess of tuition is to be reimbursed to Student Class Plaintiffs to assist in paying living expenses.

109. On or about August 24, 2023, Defendant Union sent out an email indicating Fall One Semester was going to be delayed until September 11, 2023.

110. Student Class Plaintiffs relied on this information provided by Defendant Union. Student Class Plaintiffs and many others had federal and/or private loans sent to Defendant Union. The payments were misappropriated by Defendants to pay for Defendant Union's other debts.

111. Student Class Plaintiffs relied on Defendant Union's statements by continuing to wait for classes to begin and for their reimbursements to arrive. Student Class Plaintiffs did not transfer to other schools. Student Class Plaintiffs were told classes were going to start on or about September 11, 2023. When Fall One Semester classes were cancelled on or about September 8, 2023, Defendant Union sent an email indicating Fall Two Semester classes were still going to take place. Once again, Student Class Plaintiffs did not transfer to other schools in reliance on promises that classes were going to take place.

112. Plaintiffs' reliance on the statements by Defendant Union were soon discovered to be inaccurate, as Student Class Plaintiffs were notified on or about November 1, 2023, that Fall Two

Semester classes were cancelled. Defendants knew of the statements and did nothing to prevent the disclosure of inaccurate information.

113.     Defendants failed to exercise reasonable care owed to Student Class Plaintiffs in obtaining or communicating accurate information regarding classes beginning. Defendant Union's statements demonstrated a conscious disregard for the rights of Student Class Plaintiffs and had a great probability of causing substantial harm to them.

114.     Student Class Plaintiffs have been substantially harmed by the misrepresentations by Defendant Union in an ongoing nature as to when classes were going to begin and reimbursements paid.

115.     Student Class Plaintiffs have been substantially harmed. Student Class Plaintiffs' loan amounts have been added to their loan servicing agencies for classes that were not taught and reimbursements that were not provided for amounts in excess of tuition.

116.     Defendant Union is liable for its misrepresentations.

117.     Student Class Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Union. Student Class Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Student Class Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Student Class Plaintiffs.

**<u>COUNT FIVE: GROSS NEGLIGENT CONDUCT</u>**

118.     Student Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

119.     Student Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding Student Class Plaintiffs education at Defendant Union.

120.     Upon acceptance of the contracts by both Student Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

121.     Student Class Plaintiffs have fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education. Student Class Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendant Union through federal loans. Many Student Class Plaintiffs filled out applications for private student loans. Many Student Class Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Under the terms of the contract between Student Class Plaintiffs and Defendant Union, any funds received in excess of tuition is to be reimbursed to Student Class Plaintiffs to assist in paying living expenses.

122.     Since at least May of 2023, Defendant Union have failed to fulfill the contract requiring them to provide Student Class Plaintiffs with an education. Student Class Plaintiffs have not received any reimbursement from Defendant Union, or the reimbursement was late by several weeks.

123.     On or about August 24, 2023, Defendant Union sent an email to Student Class Plaintiffs indicating classes would not start until September 11, 2023. Subsequently, Defendant Union sent an email on or about September 8, 2023, indicating Fall One classes were cancelled and that Fall Two classes were still going to be taught.

124.     On or about November 1, 2023, Student Class Plaintiffs received an email indicating Fall Two classes were cancelled. Student Class Plaintiffs relied on Defendant Union's statements that Fall One and Fall Two classes were going to occur. Defendants knew Student Class Plaintiffs' reliance was going to occur based on their representations that classes would resume.

125.     Defendants knew of the statements and did nothing to prevent the disclosure of inaccurate information. Many Student Class Plaintiffs never received their reimbursement for student loans paid to Defendant Union in excess of tuition. Student Class Plaintiffs' funds were used by Defendants to pay Defendant Union's other debts.

126.     Student Class Plaintiffs have been unable to prove their student status with loan servicing agencies. Many Student Class Plaintiffs now have money added to their loans that paid for an education they never received and that include reimbursement amounts in excess of tuition that never came, causing significant financial harm to Student Class Plaintiffs.

127.     Defendants' actions constitute a reckless disregard for the rights of Student Class Plaintiffs. Defendants had knowledge of the great probability of harm that would occur from their gross negligence. Defendant Union is liable for the reckless disregard for the rights of Student Class Plaintiffs.

128.     Student Class Plaintiffs are entitled to their actual damages for the misrepresentations by Defendant Union. Student Class Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Student Class Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Student Class Plaintiffs.

## VI.     TEACH-OUT CLASS # 1 CLAIMS

### COUNT ONE: PROMISSORY ESTOPPEL

129.     Teach-out Class # 1 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

130.     Teach-out Class # 1 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 1 Plaintiffs education at Defendant Union.

131.     Upon acceptance of the contracts by both Teach-out Class # 1 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

132.     Teach-out Class # 1 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 1 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 1 Plaintiffs qualified for grants from

the federal government, state governments and tribal lands. Each Teach-out Class # 1 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

133. Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contracts requiring them to provide Teach-out Class # 1 Plaintiffs with an education.

134. On or about August 24, 2023, Defendants sent emails to Teach-out Class # 1 Plaintiffs indicating classes would not start until September 11, 2023.

135. On or about September 8, 2023, Fall One classes were cancelled and that Fall Two classes were still going to be taught.

136. On or about November 1, 2023, Teach-out Class # 1 Plaintiffs received an email indicating Fall Two classes were cancelled.

137. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendants continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

138. Defendants notified Teach-out Class # 1 Plaintiffs in December 2023 of teach-out opportunities. Defendant Union made certain promises that all the credits Teach-out Class # 1 Plaintiffs had taken at Defendant Union would be accepted by the schools.

139. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to accept all the credits Teach-out Class # 1 Plaintiffs took at Defendant Union. Defendants knew Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations by Defendants that the universities would accept all of the credits.

140. Teach-out Class # 1 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 1 Plaintiffs that not all of the credits

would be accepted. Many Teach-out Class # 1 Plaintiffs are now required to retake classes and/or take additional coursework that would not have been required at Defendant Union.

141.     Teach-out Class # 1 Plaintiffs' reliance on Defendants inaccurate information has resulted in significant financial harm Teach-out Class # 1 Plaintiffs.

142.     Due to Defendant Union's breach of their contract, Teach-out Class # 1 Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to pay Teach-out Class # 1 Plaintiffs for the classes they have to retake and/or the additional classes they have to take that would not have been required to graduate from Defendant Union.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

143.     Teach-out Class # 1 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

144.     Teach-out Class # 1 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 1 Plaintiffs education at Defendant Union.

145.     Upon acceptance of the contracts by both Teach-out Class # 1 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

146.     Teach-out Class # 1 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 1 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 1 Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Teach-out Class # 1 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

147.     Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contract requiring them to provide Teach-out Class # 1 Plaintiffs with an education.

148. On or about August 24, 2023, Defendant Union sent an email to Teach-out Class # 1 Plaintiffs indicating classes would not start until September 11, 2023. Teach-out Class # 1 Plaintiffs relied on this statement by not seeking an education elsewhere.

149. On or about September 8, 2023, Defendant Union sent an email indicating Fall One classes were cancelled and that Fall Two classes were still going to be taught.

150. Again Teach-out Class # 1 Plaintiffs relied on this representation by Defendant Union by not seeking an education elsewhere.

151. On or about November 1, 2023, Teach-out Class # 1 Plaintiffs received an email indicating Fall Two classes were cancelled.

152. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendant Union's continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

153. Defendant Union notified Teach-out Class # 1 Plaintiffs in December 2023 of teach-out opportunities. Defendant Union made certain promises that all the credits Teach-out Class # 1 Plaintiffs had taken at Defendant Union would be accepted by the schools.

154. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to accept all the credits Teach-out Class # 1 Plaintiffs took at Defendant Union. Defendants knew Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations by Defendant Union that the universities would accept all of Teach-out Class # 1 Plaintiffs' credits.

155. Teach-out Class # 1 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 1 Plaintiffs that not all the credits would be accepted. Many Teach-out Class # 1 Plaintiffs are now required to retake classes and/or take additional coursework that would not have been required at Defendant Union.

156. Teach-out Class # 1 Plaintiffs' reliance on Defendant Union's inaccurate information has resulted in significant financial harm.

157. Defendants failed to exercise reasonable care owed to Teach-out Class # 1 Plaintiffs in obtaining or communicating accurate information regarding classes beginning. Defendant Union's statements demonstrated a conscious disregard for the rights of Teach-out Class # 1 Plaintiffs and had a great probability of causing substantial harm to them.

158. Teach-out Class # 1 Plaintiffs have been substantially harmed by the misrepresentations made by Defendant Union that teach-out universities would accept all of Teach-out Class # 1 Plaintiffs credits. Teach-out Class # 1 Plaintiffs are now forced to retake classes and/or take additional classes to complete their degrees.

159. Teach-out Class # 1 Plaintiffs have been substantially harmed. Teach-out Class # 1 Plaintiffs' loan amounts will have to be added to their loan servicing agencies for classes they already took and will have to take that would not have been required to graduate from Defendant Union.

160. Defendant Union is liable for the misrepresentations made by them when relaying inaccurate information to Teach-out Class # 1 Plaintiffs.

161. Teach-out Class # 1 Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Union. Teach-out Class # 1 Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Teach-out Class # 1 Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Teach-out Class # 1 Plaintiffs.

## COUNT THREE: GROSS NEGLIGENT CONDUCT

162. Teach-out Class # 1 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

163. Teach-out Class # 1 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 1 Plaintiffs education at Defendant Union.

164. Upon acceptance of the contracts by both Teach-out Class # 1 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

165. Teach-out Class # 1 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 1 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 1 Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Teach-out Class # 1 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

166. Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contract requiring them to provide Teach-out Class # 1 Plaintiffs with an education.

167. On or about August 24, 2023, Defendant Union sent an email to Teach-out Class # 1 Plaintiffs indicating classes would not start until September 11, 2023.

168. On or about September 8, 2023, Defendant Union sent an email indicating Fall One classes were cancelled and that Fall Two classes were still going to be taught.

169. Again Teach-out Class # 1 Plaintiffs relied on this representation by Defendant Union by not seeking an education elsewhere.

170. On or about November 1, 2023, Teach-out Class # 1 Plaintiffs received an email indicating that Fall Two classes were cancelled.

171. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendant Union's continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

172. Defendant Union notified Teach-out Class # 1 Plaintiffs in December 2023 of teach-out opportunities. Defendant Union made certain promises that all the credits Teach-out Class # 1 Plaintiffs had taken at Defendant Union would be accepted by the schools.

173. Teach-out Class # 1 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to accept all the credits Teach-out Class # 1 Plaintiffs took at Defendant Union. Defendants knew that Teach-out Class # 1 Plaintiffs' reliance was going to occur based on their representations by Defendant Union that the universities would accept all the credits.

174. Teach-out Class # 1 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 1 Plaintiffs that not all the credits would be accepted. Many Teach-out Class # 1 Plaintiffs are now required to retake classes and/or take additional coursework that would not have been required at Defendant Union.

175. Teach-out Class # 1 Plaintiffs' reliance on Defendant Union's inaccurate information has resulted in significant financial harm.

176. Defendants failed to exercise reasonable care owed to Teach-out Class # 1 Plaintiffs in obtaining or communicating accurate information regarding classes beginning. Defendant Union's statements demonstrated a conscious disregard for the rights of Teach-out Class # 1 Plaintiffs and had a great probability of causing substantial harm to them.

177. Teach-out Class # 1 Plaintiffs have been substantially harmed by the misrepresentations made by Defendant Union that teach-out universities would accept all of Teach-out Class # 1 Plaintiffs credits. Teach-out Class # 1 Plaintiffs are now forced to retake classes and/or take additional classes in order to complete their degrees.

178. Teach-out Class # 1 Plaintiffs have been substantially harmed. Teach-out Class # 1 Plaintiffs' loan amounts will have to be added to their loan servicing agencies for classes they already took and will have to take that would not have been required to graduate from Defendant Union.

179.     Defendant Union is liable for its misrepresentations made when relaying inaccurate information to Teach-out Class # 1 Plaintiffs.

180.     Defendant Union's actions constitute a reckless disregard for the rights of Teach-out Class # 1 Plaintiffs. Defendant Union had knowledge of the great probability of harm that would occur from their gross negligence.

181.     Teach-out Class # 1 Plaintiffs are entitled to their actual damages for the misrepresentations by Defendant Union. Teach-out Class # 1 Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Teach-out Class # 1 Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Teach-out Class # 1 Plaintiffs.

## VII.    TEACHOUT CLASS # 2

### COUNT ONE: PROMISSORY ESTOPPEL

182.     Teach-out Class # 2 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

183.     Teach-out Class # 2 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 2 Plaintiffs education at Defendant Union.

184.     Upon acceptance of the contracts by both Teach-out Class # 2 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

185.     Teach-out Class # 2 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 2 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 2 Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Teach-out Class # 2 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

186.    Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contract requiring them to provide Teach-out Class # 2 Plaintiffs with an education.

187.    On or about August 24, 2023, Defendant Union sent an email to Teach-out Class # 2 Plaintiffs indicating classes would not start until September 11, 2023.

188.    On or about September 8, 2023, Defendant Union indicated Fall One classes were cancelled and that Fall Two classes were still going to be taught.

189.    On or about November 1, 2023, Teach-out Class # 2 Plaintiffs received an email indicating Two classes were cancelled.

190.    Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union's continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

191.    Defendant Union notified Teach-out Class # 2 Plaintiffs in December 2023 of teach-out opportunities. Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to assist them in completing their degrees. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations.

192.    Teach-out Class # 2 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 2 Plaintiffs that they did not qualify for financial aid. Many Teach-out Class # 2 Plaintiffs are now left with having to pay for a semester out of pocket or seek private loans at a high interest rate.

193.    Teach-out Class # 2 Plaintiffs' reliance on Defendant Union inaccurate information has resulted in significant financial harm.

194.    Due to Defendant Union breach of their contract , Teach-out Class # 2 Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to pay Teach-out Class # 2 Plaintiffs for the loans in excess of the financial aid they would have received at Defendant Union.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

195.     Teach-out Class # 2 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

196.     Teach-out Class # 2 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 2 Plaintiffs education at Defendant Union.

197.     Upon acceptance of the contracts by both Teach-out Class # 2 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

198.     Teach-out Class # 2 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 2 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 2 Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Teach-out Class # 2 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

199.     Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contract requiring them to provide Teach-out Class # 2 Plaintiffs with an education.

200.     On or about August 24, 2023, Defendant Union sent an email to Teach-out Class # 2 Plaintiffs indicating classes would not start until September 11, 2023.

201.     On or about September 8, 2023, Defendant Union indicated Fall One classes were cancelled and that Fall Two classes were still going to be taught.

202.     On or about November 1, 2023, Teach-out Class # 2 Plaintiffs received an email indicating Fall Two classes were cancelled.

203.    Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union's continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

204.    Defendant Union notified Teach-out Class # 2 Plaintiffs in December 2023 of teach-out opportunities.  Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to assist them in completing their degrees. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations.

205.    Teach-out Class # 2 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 2 Plaintiffs that they did not qualify for financial aid. Many Teach-out Class # 2 Plaintiffs are now left with having to pay for a semester out of pocket or seek private loans at a high interest rate.

206.    Teach-out Class # 2 Plaintiffs' reliance on Defendant Union's inaccurate information has resulted in significant financial harm.

207.    Defendants failed to exercise reasonable care owed to Teach-out Class # 2 Plaintiffs in obtaining or communicating accurate information regarding the adequacy of the teach-out programs. Defendant Union's statements demonstrated a conscious disregard for the rights of Teach-out Class # 2 Plaintiffs and had a great probability of causing substantial harm to them.

208.    Teach-out Class # 2 Plaintiffs have been substantially harmed. Teach-out Class # 2 Plaintiffs' loan amounts will have to be added to their loan servicing agencies that would not have been required to graduate from Defendant Union.

209.    Defendant Union is liable for its misrepresentations made when relaying inaccurate information to Teach-out Class # 2 Plaintiffs.

210.    Teach-out Class # 2 Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Union. Teach-out Class # 2 Plaintiffs are entitled to punitive damages

for the conscious disregard for the rights of Teach-out Class # 2 Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Teach-out Class # 2 Plaintiffs.

## COUNT THREE: GROSS NEGLIGENT CONDUCT

211.    Teach-out Class # 2 Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

212.    Teach-out Class # 2 Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Teach-out Class # 2 Plaintiffs education at Defendant Union.

213.    Upon acceptance of the contracts by both Teach-out Class # 2 Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

214.    Teach-out Class # 2 Plaintiffs filled out the FAFSA to receive the benefit of an education from Defendants through federal loans. Many Teach-out Class # 2 Plaintiffs filled out applications for private student loans. Many Teach-out Class # 2 Plaintiffs qualified for grants from the federal government, state governments and tribal lands. Each Teach-out Class # 2 Plaintiffs has fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

215.    Since at least May of 2023, Defendant Union has failed to fulfill its obligations in the contract requiring them to provide Teach-out Class # 2 Plaintiffs with an education.

216.    On or about August 24, 2023, Defendant Union sent an email to Teach-out Class # 2 Plaintiffs indicating classes would not start until September 11, 2023.

217.    On or about September 8, 2023, Defendant Union indicated Fall One classes were cancelled and that Fall Two classes were still going to be taught.

218.    On or about November 1, 2023, Teach-out Class # 2 Plaintiffs received an email indicating Fall Two classes were cancelled.

219.     Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union continued promises that Fall One and Fall Two classes were going to occur. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations that classes would resume.

220.     Defendant Union notified Teach-out Class # 2 Plaintiffs in December 2023 of teach-out opportunities. Teach-out Class # 2 Plaintiffs detrimentally relied on Defendant Union's promises that the teach-out universities were going to assist them in completing their degrees. Defendants knew Teach-out Class # 2 Plaintiffs' reliance was going to occur based on their representations by Defendant Union.

221.     Teach-out Class # 2 Plaintiffs soon discovered Defendant Union's promises were inaccurate as the teach-out universities notified Teach-out Class # 2 Plaintiffs that they did not qualify for financial aid. Many Teach-out Class # 2 Plaintiffs are now left with having to pay for a semester out of pocket or seek private loans at a high interest rate.

222.     Teach-out Class # 2 Plaintiffs' reliance on Defendant Union's inaccurate information has resulted in significant financial harm.

223.     Defendants failed to exercise reasonable care owed to Teach-out Class # 2 Plaintiffs in obtaining or communicating accurate information regarding the adequacy of the teach-out programs. Defendant Union's statements demonstrated a conscious disregard for the rights of Teach-out Class # 2 Plaintiffs and had a great probability of causing substantial harm to them.

224.     Teach-out Class # 2 Plaintiffs have been substantially harmed by the misrepresentations made by Defendant Union that teach-out universities would give them the ability to finish their degrees. Teach-out Class # 2 Plaintiffs are now forced to pay out of pocket or apply for private loans in excess of the financial aid they would have received at Defendant Union to complete their degrees.

225. Teach-out Class # 2 Plaintiffs have been substantially harmed. Teach-out Class # 2 Plaintiffs' loan amounts will have to be added to their loan servicing agencies in excess of the amount of financial aid they would have received from Defendant Union.

226. Defendant Union is liable for its misrepresentations made when relaying inaccurate information to Teach-out Class # 2 Plaintiffs.

227. Defendant Union's actions constitute a reckless disregard for the rights of Teach-out Class # 2 Plaintiffs. Defendants had knowledge of the great probability of harm that would occur from their gross negligence.

228. Teach-out Class # 2 Plaintiffs are entitled to their actual damages for the misrepresentations by Defendant Union. Teach-out Class # 2 Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Teach-out Class # 2 Plaintiffs due to the misrepresentations by Defendant Union that led to substantial harm to Teach-out Class # 2 Plaintiffs.

## VIII.   DIPLOMA CLASS

### COUNT ONE: BREACH OF CONTRACT

229. Diploma Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

230. Diploma Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Diploma Class Plaintiffs education at Defendant Union.

231. Upon acceptance of the contracts by both Diploma Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

232. Diploma Class Plaintiffs have fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

233. Diploma Class Plaintiffs completed their degrees at Defendant Union. Defendant Union has failed to fulfill their contractual obligations by providing Diploma Class Plaintiffs with their diploma upon graduation.

234.    Since Defendant Union has breached its contract with Diploma Class Plaintiffs, Diploma Class Plaintiffs have suffered damages.

235.    Due to Defendant Union's breach of its contract, Diploma Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Diploma Plaintiffs with their diploma.

## COUNT TWO: PROMISSORY ESTOPPEL

236.    Diploma Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

237.    Diploma Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Diploma Class Plaintiffs education at Defendant Union.

238.    Upon acceptance of the contracts by both Diploma Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

239.    Diploma Class relied upon the promise of receiving a diploma upon graduation under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

240.    Diploma Class Plaintiffs completed their degrees at Defendant Union. Defendant Union has failed to fulfill their contractual obligations by providing Diploma Class Plaintiffs with their diploma upon graduation.

241.    Since Defendant Union has breached its contract with Diploma Class Plaintiffs, Diploma Class Plaintiffs have suffered damages.

242.    Due to Defendant Union's breach of their contract, Diploma Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Diploma Class Plaintiffs with their diploma.

## COUNT THREE: NEGLIGENCE

243.    Diploma Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

244. Diploma Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Diploma Class Plaintiffs education at Defendant Union.

245. Upon acceptance of the contracts by both Diploma Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

246. Diploma Class relied upon the promise of receiving a diploma upon graduation under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

247. Diploma Class Plaintiffs completed their degrees at Defendant Union. Defendant Union has failed to fulfill their contractual obligations by providing Diploma Class Plaintiffs with their diploma upon graduation.

248. Defendant Union owed Diploma Class Plaintiffs a duty to provide them with their diploma upon graduation. Defendant Union has breached that duty by not providing Diploma Class Plaintiffs with their diploma upon graduation.

249. As a result of Defendant Union's breach, Diploma Class Plaintiffs have suffered an injury. Defendants were the cause of that injury.

250. Diploma Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Diploma Class Plaintiffs with their diploma.

## IX.  TRANSCRIPT CLASS

## COUNT ONE: BREACH OF CONTRACT

251. Transcript Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

252. Transcript Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Transcript Class Plaintiffs education at Defendant Union.

253. Upon acceptance of the contracts by both Transcript Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

254. Transcript Class Plaintiffs have fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

255. Transcript Class Plaintiffs paid for Defendant Union to provide them with transcripts so they could apply to other universities and/or graduate programs. Defendant Union has failed to fulfill their contractual obligations by providing Transcript Class Plaintiffs with their transcripts.

256. Since Defendant Union has breached its contract with Transcript Class Plaintiffs, Transcript Class Plaintiffs have suffered damages.

257. Due to Defendant Union's breach of their contract, Transcript Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Transcript Class Plaintiffs with their transcripts.

## COUNT TWO: PROMISSORY ESTOPPEL

258. Transcript Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

259. Transcript Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Transcript Class Plaintiffs education at Defendant Union.

260. Upon acceptance of the contracts by both Transcript Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

261. Transcript Class Plaintiffs have fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

262. Transcript Class Plaintiffs paid for Defendant Union to provide them with transcripts so they could apply to other universities and/or graduate programs.

263. Transcript Class Plaintiffs relied upon the promise that paying for a transcript, one would be provided to them by Defendant Union. Defendant Union has failed to fulfill their contractual obligations by providing Transcript Class Plaintiffs with their transcripts.

264.     Since Defendant Union has breached their contract with Transcript Class Plaintiffs, Transcript Class Plaintiffs have suffered damages.

265.     Due to Defendant Union's breach of their contract, Transcript Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Transcript Class Plaintiffs with their transcripts.

### COUNT THREE: NEGLIGENCE

266.     Transcript Class Plaintiffs incorporate paragraphs 1 through 68 by reference herein.

267.     Transcript Class Plaintiffs entered into verbal and/or written contracts with Defendant Union regarding the Transcript Class Plaintiffs education at Defendant Union.

268.     Upon acceptance of the contracts by both Transcript Class Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other regarding a college education.

269.     Transcript Class Plaintiffs have fulfilled their obligations under their respective contract requiring them to pay Defendant Union in exchange for receiving an education.

270.     Transcript Class Plaintiffs paid for Defendant Union to provide them with transcripts so they could apply to other universities and/or graduate programs. Defendant Union has failed to fulfill their contractual obligations by providing Transcript Class Plaintiffs with their transcripts.

271.     Defendant Union had a duty to provide Transcript Class Plaintiffs with their transcripts upon receiving payment. Defendant Union has breached that duty by failing to provide transcripts to Transcript Class Plaintiffs.

272.     As a result of Defendant Union's breach, Transcript Class Plaintiffs have suffered injury. Defendant Union was the cause of that injury.

273.     Transcript Class Plaintiffs seek declaratory and injunctive relief requiring Defendant Union to provide Transcript Class Plaintiffs with their transcripts.

### X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will enter judgment against Defendants and grant the following relief:

274.  Grant Class Certification;

275.  Declaratory and injunctive relief;

276.  Equitable relief (where applicable);

277.  Compensatory Damages (where applicable);

278.  Punitive Damages (where applicable);

279.  Pre and post-judgment interest;

280.  Reasonable attorney fees and costs (where applicable);

281.  Leave to add additional Plaintiffs and/or state law claims by motion, the filing of written consent forms, or any other method approved by the Court; and

282.  For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## XI.    JURY DEMAND

Plaintiffs, by counsel, hereby request that trial of this matter be tried by a jury.

Respectfully submitted,

*/s/Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
(P) 614-221-4221
(F) 614-744-2300
(E) bderose@barkanmeizlish.com

*/s/ Rachel J. Guin*
Rachel J. Guin (*Pro Hac Vice Anticipated*)
Michelle K. Floyd (*Pro Hac Vice Anticipated*)
**ROTHBERG LAW FIRM**
505 E. Washington Blvd.
Fort Wayne, IN 46859
(P) (260) 422-9454
(F) (260) 422-1622
(E) rguin@rothberg.com
       mfloyd@rothberg.com