# Exhibit C



NOV 0 7 2023

Dr. Karen Schuster Webb  
President  
Union Institute and University  
2090 Florence Avenue  
Cincinnati, Ohio 45206-1925

SENT VIA UPS OVERNIGHT MAIL  
Tracking #1Z37X7Y30197202432

OPE ID: 01092300

Re: Imposition of Emergency Action and Initiation of Termination and Fine Actions

Dear Dr. Webb:

This is to inform you that the United States Department of Education ("Department") is hereby imposing an emergency action and initiating a termination action and a fine action against Union Institute & University ("UIU"), located in Cincinnati, Ohio. The Department is taking the emergency action under the authority of 20 U.S.C. § 1094(c)(1)(G), and the procedures set forth in the Student Assistance General Provisions regulations at 34 C.F.R. § 668.83. The basis for the emergency action is identified in Part I of this letter. As explained in Part II of this letter, for these same reasons, the Department intends to terminate the eligibility of UIU to participate in programs authorized under Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 et seq. ("Title IV programs") and the procedures set forth in 34 C.F.R. §§ 668.86, 668.95, and 668.97. Finally, for the reasons set forth in Part III of this letter, the Department intends to fine UIU $4,262,720 for violations described herein.

I.

Under this emergency action, the Department withholds funds from UIU and its students and withdraws UIU's authority to obligate and disburse funds under the following Title IV programs: Federal Pell Grant (Pell Grant"), Federal Supplemental Educational Opportunity Grant ("FSEOG"), Iraq and Afghanistan Service Grant ("IASG"), Teacher Education Assistance for College and Higher Education ("TEACH") Grant, Federal Work-Study ("FWS"), Federal Perkins Loan ("Perkins"), and William D. Ford Federal Direct Loan ("Direct Loan"). The Direct Loan Program includes the Federal Direct Stafford/Ford Loan Program, the Federal Direct Unsubsidized Stafford/Ford Loan Program, and the Federal Direct PLUS Program. The FSEOG, FWS, and Perkins Loan programs are known as the campus-based programs.

While the emergency action is in effect, UIU is barred from initiating commitments of Title IV Program aid to students, whether by accepting Student Aid Reports under the Pell Grant Program or the TEACH Grant Program, by certifying applications for loans under the Direct Loan Program or issuing a commitment for aid under the campus-based programs. UIU is also barred



Administrative Actions and Appeals Service Group  
830 First St., N.E. Washington, D.C. 20002-8019  
StudentAid.gov

Dr. Karen Schuster Webb
Union Institute and University
Page 2

from using its own funds or Federal funds on hand to make Title IV program grants, loans, or work assistance payments to students, or to credit student accounts with respect to such assistance. Further, UIU may not release to students Direct Loan proceeds and must return any loan proceeds to the lender. Finally, unless other arrangements are agreed to between UIU and the Department, UIU may not disburse or obligate any additional Title IV program funds to satisfy commitments in accordance with 34 C.F.R. § 668.26 for as long as the emergency action remains in effect.

In order to take an emergency action against an institution, a designated Department official must determine that immediate action is necessary to prevent the continued misuse of Federal funds, and that the likelihood of loss outweighs the importance of awaiting the outcome of the regulatory procedures prescribed for limitation, suspension, or termination actions. As the designated Department official, based on the violations described below, I have determined that immediate action is necessary to prevent misuse of Federal funds, and that the likelihood of loss outweighs the importance of these regulatory procedures for limitation, suspension, or termination.

The Department has based this decision upon reliable information obtained as a result of inquiries made by the Department's Chicago/Denver School Participation Division ("SPD"). As part of its inquiries, the Department analyzed documentation submitted by UIU in response to two separate file review requests for unpaid credit balances, information provided in complaints from students and employees, information provided by Departmental records, and information provided by UIU itself and from staff research. This information disclosed that UIU committed severe breaches of its fiduciary duty to its students and the Department as well as committed serious, ongoing violations of Title IV regulations. Based on the violations outlined below, the Department has determined that an emergency action against UIU is warranted.

## I. UIU BREACHED ITS FIDUCIARY DUTY TO ITS STUDENTS AND THE DEPARTMENT

Before UIU began participation in the Title IV programs, you signed a program participation agreement ("PPA") with the Department stating that UIU would comply with all Title IV program requirements. (Enclosure 1). These requirements mandate that UIU use funds received under Title IV solely for the purposes specified in each individual student assistance program, since the funds received under those programs are held in trust for the intended student beneficiary and the Secretary. 20 U.S.C. § 1094(a)(1); see generally 34 C.F.R. § 668.14. By entering into a PPA with the Department, UIU, and its officers, accepted the responsibility to act as fiduciaries in the administration of the Title IV programs. As fiduciaries, the institution and officers are subject to the highest standard of care and diligence in administering the Title IV programs and in accounting to the Secretary for the funds received. 34 C.F.R. § 668.82(a) and (b).

In order to meet its responsibilities to the Department, an institution must be capable of adequately administering the Title IV programs. In this regard, an institution must comply with all Title IV statutory and regulatory requirements. 34 C.F.R. § 668.16(a). In addition, an institution must meet the Title IV financial responsibility standards. See 34 C.F.R. Part 668, Subpart L. Compliance with these standards is critical to ensure that an institution has sufficient

Dr. Karen Schuster Webb
Union Institute and University
Page 3

resources to effectively meet the needs of students and the Title IV programs. An institution must also administer the Title IV programs in which it participates with adequate checks and balances in its system of internal controls. 34 C.F.R. § 668.16(c)(1). This includes maintaining accurate and complete records supporting all Title IV payments made to each student. See 34 C.F.R. §§ 668.16(d), 668.24.

As set forth below, UIU has breached its fiduciary duty to its students and the Department. In July 2023, the SPD received allegations from students and employees[1] that UIU was not meeting its ongoing financial obligations and was not acting as a fiduciary with its administration of Title IV program funds. Specifically, UIU was alleged to have not been paying Title IV credit balances to students, not paying the salaries of its employees, and of being in arrears on its debts. After the SPD obtained information from UIU that the student complaints concerning unpaid credit balances were correct, the SPD transferred UIU to the Heightened Cash Monitoring 2 ("HCM2") method of payment on August 9, 2023. UIU subsequently ceased offering instruction, as of August 28, 2023, for all of its on-ground programs when it cancelled the start of its Fall 1 term scheduled to begin on that date. Even though UIU ceased offering its on-ground programs, it asserted in response to the SPD's inquiries, that it had not ceased instruction because it was continuing to offer online instruction, despite its apparent inability to meet its payroll obligations and the resulting loss of staff. The SPD has not confirmed whether any online students are able to engage with UIU faculty although the other conditions described in this letter support the emergency action.

### A. Union Hypothecated Title IV Credit Balances Owed to Students

If an institution disburses Title IV program funds by crediting a student's account and the total amount of all Title IV program funds credited exceeds that amount of tuition and fees, room and board, and other authorized charges the student is required to pay, the institution must pay the resulting credit balance directly to the student or parent. These credit balances must be paid as soon as possible but no later than 14 days after the balance occurred, or 14 days after the first day of classes in a payment period if the balance occurred before that time. 34 C.F.R. § 668.164(h). Credit balances must be paid promptly because those funds may be needed to cover living expenses or other non-institutional costs. Institutions may in general hold credit balance funds to cover future payment period charges only if a valid authorization is obtained from the student (or parent). 34 C.F.R. § 668.165(b). However, even if an institution obtains a valid authorization, it must pay any remaining balance on loan funds by the end of the loan period and any remaining other Title IV funds by the end of the last payment period in the award year for which the funds were awarded. 34 C.F.R. § 668.165(b)(5)(iii).

In April 2023, student and employee complaints alerted the SPD to allegations that UIU had failed to pay Title IV credit balances for its Spring 2023 term. The SPD reviewed the complaints and emailed UIU officials on April 21, 2023, requesting an informal file review of all Title IV credit balances that were due to be paid for the Spring 2023 term. According to the file review data submitted by UIU on May 3, 2023, the majority of unpaid Title IV credit balances had been

---

[1] Employees complained to the Ohio Department of Higher Education (ODHE) and ODHE shared the information with the SPD.

paid by the institution on April 14, 2023.[2] (Enclosure 2). Given UIU's response to these complaints, and completion of the requested file review, institutional officials were fully aware of UIU's obligation to timely pay Title IV credit balances.

UIU again drew down student funds from the Department and misappropriated the Title IV proceeds to pay other expenses in June 2023. At the end of July 2023, the SPD received additional student complaints regarding UIU's continued failure to pay Title IV credit balances. In response to these complaints, the SPD again contacted UIU and spoke with UIU's Interim Vice President of Academic Affairs, Dr. Tom Frederick on July 31, 2023. During this conversation, Dr. Frederick noted that UIU was having "cash flow issues again." He also explained that UIU had issued all Title IV credit balances to those students who had set up direct deposit/electronic funds transfers but that it was not issuing/mailing paper Title IV credit balance checks because they would not be honored if students attempted to cash them.

Dr. Frederick also informed the SPD that UIU's Chief Fiscal Officer and most of the Business Office had resigned and that several other staff had been "let go". Given these circumstances, the SPD requested that UIU submit another file review for all Title IV credit balances owed by UIU from May 2023 to early August 2023. The completed spreadsheet submitted by UIU on August 8, 2023, identified a total of $753,374 in outstanding Title IV credit balances that were owed to 157 students. (Enclosure 3). Alarmingly, most of the Title IV credit balances reported as late on the August 8th accounting were due to be paid in mid-May, barely one month after UIU had resolved the first instance of non-compliance. As a result of UIU's continued failure to pay Title IV credit balances, the Department transferred UIU to the "HCM2" system of payment on August 9, 2023. Furthermore, the Department's August 9, 2023 HCM2 notification stipulated that prior to submitting its first HCM2 claim, UIU was required to document that outstanding credit balances have been paid and the checks liquidated. (Enclosure 4).

In an attempt to explain the unpaid Title IV credit balances, you asserted in a response sent via email on August 28, 2023, that the Title IV credit balance funds were in one of UIU's bank accounts. You went on to explain that UIU couldn't access the account to pay the Title IV credit balances owed because a third party had placed a lien on the account and the bank subsequently swept the account and used those funds to pay the balances owed on UIU's delinquent credit cards. (Enclosure 5). If this is true, it is an egregious failure to protect UIU students Title IV funds. The regulations set forth under 34 C.F.R § 668.163 require institutions to ensure that accounts containing Title IV funds are clearly identified as such by either including the phrase "Federal Funds" in the name of the account, notifying the bank which accounts contain Title IV funds, or filing a UCC-1 statement disclosing that the account contains Federal funds. Complying with this mandate would have prevented other entities from obtaining Title IV funds that belonged to students. Notably, you also informed the Department that you contacted the bank to protest the use of designated funds after the bank had already swept the account. However, notifying the bank after the fact does nothing to cure UIU's critical failure as a fiduciary.

---

[2] Of the 390 students with Title IV credit balances due, 50 (12.8%) were paid an average of 25 days late.

The Department's cash management regulations in 34 C.F.R. Part 668, Subpart K, set forth the rules and procedures under which a participating institution requests, maintains, disburses, and otherwise manages Title IV program funds. These regulations promote sound cash management of Title IV program funds by an institution, minimize the financing costs to the federal government in making Title IV program funds available to a student or an institution, and minimize the costs that accrue to a student. 34 C.F.R. § 668.161(a)(1).

These regulations specifically provide that with the exception of funds received by an institution for administrative expenses and funds used for the Job Location and Development Program under the FWS Program, funds received by an institution under the Title IV programs are held in trust for the intended student beneficiaries or the Secretary, and that the institution, as a trustee of federal funds, may not use or hypothecate (*i.e.*, use as collateral) Title IV program funds for any other purpose. 34 C.F.R. § 668.161(b).

Further, the fiduciary standard of conduct requires UIU to safeguard Title IV funds it receives as a participant in the Title IV programs and to ensure those funds are used only for the purposes for which those funds were intended. 34 C.F.R. § 668.82(a). Based upon the facts reported by UIU officials, UIU either used or permitted student Title IV credit balances funds to pay institutional debts, when these funds should have been paid to students nearly <u>six months ago</u>. In addition to the $200,000 swept by the bank presumably to pay delinquent UIU debts, UIU also failed to explain what happened to the remaining $553,374 in Title IV credit balance funds owed to its students. Students rely on Title IV credit balance funds to pay living expenses while they are enrolled at a post-secondary institution. By appropriating Title IV funds or by withholding them for months, UIU has violated its fiduciary duty to pay students their credit balances timely.

UIU has breached its fiduciary duty to its students and the Department and thus it cannot be trusted to administer the Title IV programs in accordance with regulations. The standard of conduct regulation at 34 C.F.R § 668.82(c) specifically states that the failure of a participating institution to administer the Title IV programs or to account for the funds it receives in accordance with the highest standard of care and diligence required of a fiduciary, constitutes grounds for an emergency action. As described below, UIU's brazen misuse of Title IV funds is further highlighted by its illegal draw of Direct Loan funds that it was not then entitled to receive.

## B. UIU ILLEGALLY DREW $43,524 IN DIRECT LOAN FUNDS

In addition to misusing Title IV loan proceeds that should have paid student credit balances, UIU drew down excessive Title IV loan funds through this system that were used to pay institutional obligations. As previously stated, the Department established cash management regulations in 34 C.F.R. Part 668, Subpart K, to promote sound cash management of Title IV funds by an institution, minimize the financing costs to the federal government in making Title IV funds available to a student or an institution, and minimize the costs that accrue to a student. 34 C.F.R. § 668.161(a)(1). This system is designed to ensure that institutions have timely access to draw down student Title IV funds as needed to be paid to the students promptly. These regulations specifically provide that Title IV funds received by an institution are held in trust for the intended student beneficiaries or the Secretary, and that the institution, as a trustee of federal

Dr. Karen Schuster Webb
Union Institute and University
Page 6

funds, may not use or hypothecate (*i.e.*, use as collateral) Title IV funds for any other purpose. 34 C.F.R. § 668.161(b).

Institutions use the Department's G5 payment system to request payments, adjust drawdowns, and return funds. G5 provides continuous access to current grant and payment information, such as authorized amounts,[3] cumulative drawdowns, current available balances,[4] and payment histories. Institutions under the advance payment method receive an initial Direct Loan authorization prior to the first day of the award year (July 1) which is based on the institution's program disbursements from the previous award year. As an institution submits Direct Loan disbursement records, the Department's Common Origination and Disbursement ("COD") system[5] tracks the total accepted and posted amounts against the funds drawn and the institution's authorized amount. Increases to that authorization are made several times throughout the award year. If needed, the institution may also request a funding level increase to ensure Title IV program funds are available for it to draw in advance, for immediate needs, as long as there are no unsubstantiated funds for more than 30 days.

Each week the Department produces a G5/COD Balance Report to monitor Title IV program balances and identify institutions with balances that require further analysis and follow-up.[6] A detailed review of UIU's Direct Loan transaction history for the 2022-23 award year revealed that between June 23rd and June 27th, UIU entered disbursement records in COD totaling $14,653. This is the amount that UIU should have drawn on June 27, 2023, but instead, UIU drew $27,957 ($13,304 more than it was entitled to). UIU then proceeded to make several draws of Direct Loan funds knowing it did not have <u>any</u> corresponding active student disbursement records in the COD system to substantiate the drawdowns. In total, UIU hypothecated $43,524. The table below summarizes UIU's breach of its fiduciary responsibility by identifying each drawdown for which UIU hypothecated Direct Loan funds. Enclosure 6 provides additional details.

---

[3] An institution's authorization is the amount of Title IV program funds for which the institution is currently eligible. A separate authorization is maintained for each program by award year.
[4] An institution's available balance is the amount of cash the institution has available to draw down through G5. It is the difference between the authorized amount and the institution's net drawdowns to date.
[5] COD is the Department's software system that uses electronic records to exchange data with institutions. Institutions submit student-specific origination and disbursement records to substantiate Title IV program funds received.
[6] The G5/COD Balance Report identifies summary totals for authorizations, drawdowns, and disbursements from both the G5 and the COD systems for the Direct Loan program as well as several other Title IV grant programs. It also identifies institutions that may have "Unsubstantiated Funds > 30 Days" which can be an indication that an institution is out of compliance with cash management, disbursement reporting, and/or reconciliation requirements. Institutions are included on this report for all active program award years.

| Date of Draw | Amount Drawn | COD Disbursement Records | Unsubstantiated Amount | Payment Control No. |
|---|---|---|---|---|
| June 27, 2023 | $27,957 | $14,653 | $13,304 | 2023062608052 |
| June 28, 2023 | $8,289 | 0 | $8,289 | 2023062710125 |
| July 3, 2023 | $2,721 | 0 | $2,721 | 2023062918304 |
| July 10, 2023 | $8,821 | 0 | $8,821 | 2023070625881 |
| July 12, 2023 | $10,389 | 0 | $10,389 | 2023071029653 |
| TOTAL | $58,177 | $14,653 | $43,524 | |

As a result of the unsubstantiated Direct Loan balance, the COD Reconciliation Coordinator sent numerous emails between July 31st and September 18th, alerting UIU that it was out of compliance with applicable regulations and must either immediately return the unsubstantiated Direct Loan funds or substantiate the funds by submitting corresponding disbursement records. (Enclosure 7.) UIU, however, failed to take action to resolve the unsubstantiated funds; therefore, the matter was escalated to the School Reconciliation Partner Division (SRPD). SRPD staff sent an email on September 21, 2023, informing UIU of its violation and that it must resolve the unsubstantiated funds by October 5, 2023. The email reminded UIU that resolution of the matter involved submitting additional disbursement records or returning the funds (payment instructions were included in the email). You responded that same day stating that UIU would pay the unsubstantiated balance by October 5, 2023. (Enclosure 8). However, the balance was not returned as promised. Instead, UIU returned only $5,000 (approximately 11.5% of the balance). As a result, the Department issued a formal *Direct Loan Call for Cash Demand Letter* (Demand Letter) on October 6, 2023, demanding resolution of the balance no later than November 6, 2023. (Enclosure 9). Although UIU has paid a nominal amount of the balance owed, UIU breached its fiduciary duty when it obtained and then used for its own purposes $43,524 in Direct Loan funds for over three months and UIU has failed to repay the remaining balance of $38,524.

UIU expressly agreed in its PPA that as a fiduciary responsible for administering federal funds, if it was permitted to request funds under the Title IV program's advance payment method, it would time its requests for funds to meet only the institution's students immediate Title IV program needs. 34 C.F.R. § 668.14(b)(2).

Based upon the above-referenced facts, UIU, in violation of the applicable Title IV cash management regulations, knowingly drew down Direct Loan funds that it was not then entitled to receive. UIU breached its fiduciary duty to the Department and cannot be trusted to administer the Title IV programs in accordance with the Department's regulations. The emergency action regulation at 34 C.F.R. § 668.83(c)(2)(i) specifically identifies an institution's procurement of Title IV program funds in an amount that exceeds the amount for which its students are eligible as a violation of a Title IV program requirement that causes misuse and the likely loss of Title IV funds. An emergency action is therefore warranted.

### C. Union Has Ceased Offering Instruction for Its On-Ground Programs

To continue participation in the Title IV programs, an institution must meet the Title IV standards of financial responsibility. 34 C.F.R. § 668.171(a). Under this standard, an institution must, among other things, provide the services described in its official publications and statements. 34 C.F.R. § 668.171(a)(1). An institution's failure to meet this standard is grounds for an administrative action. 34 C.F.R. § 668.171(i)(1).

An institution also loses its eligibility to participate in the Title IV programs if it ceases to provide educational programs for a reason other than a normal vacation period or natural disaster that directly affects the institution or its students. 34 C.F.R. §§ 600.40(a)(iii), 600.26(a)(1).

Per the institution's academic calendar published in its academic catalog, UIU was scheduled to start its Fall term for all of its on ground program offerings on August 28, 2023. However, reports in the media indicated that UIU had cancelled its Fall term. Following receipt of those media accounts, the Department immediately contacted UIU. During that conversation, Dr. Frederick confirmed that although the "Fall 1" term was initially delayed with a new start date of September 11, 2023, UIU subsequently decided to cancel instruction for the term. UIU provided the Department with a copy of its communication to students which was issued on September 8, 2023, and informed students that although "Fall 1" had been cancelled, "Fall 2" would begin on November 6, 2023, as scheduled. However, the note at the bottom of the communication stated, "Please note, these changes do not affect the Ph.D. or the TIES schedule." (Enclosure 10).

Because the communication to students noted that scheduled instruction was not affected for students in the Ph.D or TIES programs, the Department subsequently asked UIU to substantiate that courses in those programs continued to be taught during the "Fall 1" term. However, despite the Department's request, UIU provide no evidence of continued instruction in those programs during the "Fall 1" term.[7] When asked about the type of academic instruction for these schedules, Dr. Frederick stated in a September 12, 2023 email that the Ph.D. had a five-day residency in July 2023 followed by both synchronous and asynchronous instructional activities through December and that TIES uses Zoom to provide synchronous online instruction that is supported by asynchronous instruction.[8] (Enclosure 11).

In the absence of the evidence requested, UIU's claim that it is still providing instruction is entitled to little weight given the nature of the academic instruction described. Regardless, the facts that UIU cancelled its Fall 1 term, that UIU hasn't paid its employees since August 11, 2023, and that at least several staff have either resigned or been "let go" demonstrates that UIU has ceased to provide many, if not all, the educational services and/or instruction it promised to its students as described in its publications.

---

[7] UIU provided lists of currently enrolled students and faculty, but these "lists" do not demonstrate that instruction was occurring.
[8] UIU also clarified that TIES stood for The Institute for Educational Studies and that it was a Master's in Education in Montessori and Integrative Learning

Dr. Karen Schuster Webb
Union Institute and University
Page 9

## II. UNION FAILS TO MEET THE STANDARDS OF FINANCIAL RESPONSIBILITY

To continue participation in the Title IV programs, an institution must meet the Title IV standards of financial responsibility. 34 C.F.R. § 668.171(a). Under this standard, an institution must have the ability to provide the services described in its official public cations and statements, meet all its financial obligations, and be current in its debt payments. 34 C.F.R. §§ 668.171(a), (b)(3). An institution's failure to meet this standard is grounds for an administrative action. 34 C.F.R. § 668.171(i)(1). As detailed below, UIU has repeatedly failed to meet its financial and debt obligations and therefore does not meet the Title IV standards of financial responsibility.

Despite receiving Title IV funds from the Department on behalf of students, UIU failed to disburse Title IV credit balance checks to students and confirmed to Department officials that said checks would "bounce" if issued. Given that UIU neglected to properly identify accounts containing Federal funds, its failure to disburse Title IV credit balances was compounded by its inability to pay its debts which resulted in a third party placing a lien on UIU's bank account and the bank subsequently sweeping $200,000 from the account.[9] UIU hypothecated[10] Title IV credit balances that were due to be paid nearly <u>six months ago</u> (in May 2023) and then, from June 27th – July 12th, illegally drew $43,524 in Direct Loan funds knowing that it did not have the corresponding student disbursement records to substantiate those funding draws. Although UIU returned a nominal portion of the unsubstantiated Direct Loan funds, the evidence clearly shows that UIU has retained for its own purposes $43,524 in unsubstantiated Direct Loan funds for over three months and still holds, without any authorization, the remaining balance of $38,524.

UIU's financial deterioration was further exposed in August 2023 through its failure to pay its employees. In September 2023, you confirmed that UIU was behind on payroll. (Enclosure 10) The payroll information that UIU subsequently provided revealed that UIU failed to pay 81 employees for the July 28, 2023, pay period and payroll has not been processed for the August 11th and August 25th pay periods. (Enclosure 12). Furthermore, UIU has not provided the Department with any evidence that these payment periods or any of the subsequent payment periods have been processed.[11] Also in September 2023, the SPD discovered that UIU had been locked out of its main campus located at 2090 Florence Avenue, Cincinnati, Ohio 45202-1925.[12] You subsequently provided a copy of a draft Forbearance Agreement which indicated that UIU had not paid its rent since February of 2023 and, as of August 2023, owed $449,535.99 in back rent. (Enclosure 13). Recent media reports also state that UIU assured employees that the institution was continuing their health insurance coverage, though at least some employees were notified that those benefits were canceled retroactive to June 30, 2023.[13] These facts, coupled with the cancellation of its "Fall 1" term, also demonstrate that UIU has ceased to provide, many,

---

[9] On September 5, 2023, you stated that the majority of UIU's accounts had a zero balance.
[10] As previously stated, UIU has failed to explain what happened to the remaining $553,374 in Title IV credit balances after the account was swept.
[11] September 8th, September 22nd, October 6th, and October 20th pay periods.
[12] UIU reported this address as its main campus when it submitted its recertification application on March 18, 2022.
[13] <u>A University Called Off Fall Classes. Employees Aren't Being Paid. Now What?</u> *The Chronicle of Higher Education*, October 10, 2023 (chronicle.com)

if not all, the educational services and/or instruction it promised to its students as described in its publications.

UIU is also in arrears on its payments for several short-term loans and has two lawsuits pending against it. INSTAFUNDERS, LLC filed a lawsuit against UIU on April 27, 2023, demanding $296,866.00 (Enclosure 14) and Cedar Advance, LLC filed a lawsuit against UIU on May 16, 2023, demanding $410,625.00 (Enclosure 15). Additionally, UIU is now more than 60 days past on its annual dues owed to its accrediting agency.

UIU's deteriorating financial situation imperils its ability to continue operations. As a result, the Department notified UIU on September 21, 2023, that it was required to submit an irrevocable Letter of Credit (LOC) in the amount of $12,075,546 on or before October 13, 2023.[14] (Enclosure 16). The Department has engaged in several communications with UIU seeking to clarify the institution's intentions regarding the submission of the required financial protection, with unclear answers by UIU. In any case, as of the date of this notice, UIU has not submitted the required LOC or other financial protection. UIU's inability to meet the Title IV financial responsibility standards and its deteriorating financial situation further underscores the need for this action.

## III. UIU IS NOT IN COMPLIANCE WITH ITS ACCREDITOR'S STANDARDS

Accreditation by a nationally recognized accrediting agency is one of the statutory requirements that an institution must meet to be eligible to participate in the programs authorized under Title IV of the HEA. 20 U.S.C. §§ 1001(a)(5), 1002(b)(1)(D), (c)(1)(B). Additionally, to begin and participate in any Title IV program, an institution must demonstrate that it its capable of adequately administering that program. 34 C.F.R. § 668.16. The Secretary does not consider an institution to have that administrative capability if a review by the institution's accrediting agency discloses significant problems. 34 C.F.R. § 668.16(j)(1).

On October 2, 2023, UIU's accrediting agency, the Higher Learning Commission ("HLC"), sent a letter notifying UIU that it was not in compliance with the "Obligations of Membership." (Enclosure 17). In particular, HLC received multiple institutional complaints in July and August of 2023 and UIU was given until September 8th and 24th to respond to those complaints, and the institution failed to respond. UIU was also required to submit a "Provisional Plan" with teach-out agreements no later than September 25th but failed to timely submit that plan. Moreover, UIU has failed to remit payment of its annual dues which is now more than 60 days past due and HLC recently confirmed in an email that UIU is past-due on other invoices as well.

This significant noncompliance reported by HLC is further evidence that UIU lacks the requisite administrative capability necessary to participate in the Title IV programs.

---

[14] This amount represents 100% of the Title IV funds received by the institution during its most recently completed fiscal year.

## IV. CONCLUSION

UIU's misconduct cited in this action represents multiple violations of Department regulations and the PPA that UIU entered into with the Department. UIU has misused Title IV funds to the detriment of its students, the Department, and the taxpayers. UIU's repeated failure to act as a fiduciary in administering federal funds creates serious risks that the funds will continue to be misused in the future in a similar manner. Further, UIU's failure to meet the financial responsibility standards establishes that Title IV funds will continue to be at risk if the Department does not act. UIU's serious misconduct has left the Department no choice but to impose this emergency action to prevent the further misuse of Federal funds.

**This emergency action is effective on the date of this letter,** which is the date of mailing, and will remain in effect until either a decision to remove the emergency action is issued in response to a request from UIU to show cause why the emergency action is unwarranted or until the completion of the termination action that is initiated by Part II of this notice. The terms of the termination action may supersede the provisions of this emergency action regarding the obligation and disbursement of Title IV program funds.

UIU may request an opportunity to show cause why this emergency action is unwarranted. To request an opportunity to show cause, please write and submit your request to me via the U.S. Postal Service or an express mail service at the following address:

> Administrative Actions and Appeals Service Group
> U.S. Department of Education
> Federal Student Aid
> 830 First Street, NE (UCP-3, Room 92G4)
> Washington, DC 20002-8019

If UIU requests a show cause hearing, my office will refer the case to the Office of Hearings and Appeals ("OHA"), which is a separate entity within the Department. That office will arrange for assignment of the case to an official, who will conduct the hearing. UIU is entitled to be represented by counsel at the hearing and otherwise during the show cause proceeding.

II.

The Department intends to terminate UIU's eligibility to participate in the Title IV programs for all the reasons stated in Part I of this notice. The Department is taking this termination action under the authority of 20 U.S.C. § 1094(c)(1)(F) and the Department's regulations at 34 C.F.R. Part 668, Subpart G, including 34 C.F.R. §§ 668.86, 668.95, and 668.97. Those regulations set forth the procedures and guidelines that the Department has established for terminating the eligibility of an institution to participate in any Title IV programs. Initiation of this termination action means that the emergency action will remain in effect until completion of the termination proceeding, unless the emergency action is otherwise lifted. 34 C.F.R. § 668.83(f)(1). The termination proceeding includes any appeal to the Secretary.

The eligibility of UIU to participate in the Title IV programs will terminate on November 27, 2023 unless we receive by that date one of the following: 1) a request for a hearing to be conducted by the Office of Hearings and Appeals; or 2) a request for reconsideration of the termination action by submitting written material indicating why the termination action should not be imposed.

If UIU chooses to request a hearing or to submit written materials, you must write to me at the address in Part I of this letter. If UIU requests a hearing, the case will be referred to the Office of Hearings and Appeals. That office will arrange for assignment of UIU's case to an official who will conduct an independent hearing. UIU is entitled to be represented by counsel at the hearing and otherwise during the proceedings. If UIU does not request a hearing, but submits material instead, the Department shall consider that material and notify you whether the termination will become effective, will be dismissed, or limitations will be imposed. The consequences of termination are set forth in 34 C.F.R. § 668.94.

III.

This is also to inform you that the Department intends to fine UIU $4,262,720 based on two of the violations set forth in Part I of this letter: 1) the illegal draw and hypothecation of Direct Loan funds without eligible disbursements supporting those draws and 2) the illegal retention of credit balances owed to students. This fine action is being taken in accordance with the procedures that the Secretary has established for assessing fines against institutions participating in any or all of the Title IV, HEA programs. 34 C.F.R. § 668.84. Title IV program regulations permit a fine of $67,544 for each such violation. In determining the amount of a fine, the Department considers the gravity of the offense and the size of the institution. 34 C.F.R. § 668.92.

In determining the size of an institution, the Department considers the amount of Title IV program funds received by or on behalf of students for attendance at that institution and compares that figure to the median funding for all institutions participating in the Title IV programs. The most recent year for which complete funding data is available to determine the median funding level for all Title IV recipients is 2021-2022. According to Department records, UIU received $10,021,111 in Direct Loan funds, $866,329 in Pell Grant funds, and $210,900 in campus-based funds during the 2021-2022 award year. The latest information available to the Department also indicates that the median funding level for institutions participating in the Direct Loan program during the 2021-2022 award year is $2,196,429, the median funding level for the Pell Grant program is $1,577,089, and the median funding level for the campus-based programs is $272,724. Accordingly, UIU is considered a large institution because its Direct Loan and campus-based funding levels exceed the median funding levels. Even though its Federal Pell Grant funding is lower than the median level for the 2021-2022 award year, this reflects that UIU has a smaller undergraduate population compared to its graduate student population and does not impact the Department's determination that UIU is a large institution. Given the funding level of the institution, the size of UIU does not warrant mitigation of the fine amount.

Dr. Karen Schuster Webb
Union Institute and University
Page 13

In determining the number of violations, the Department has determined that each instance of the unpaid credit balances since May 2023 constitutes a violation. Further, each draw of Direct Loan funds that was not supported by eligible disbursements to students constitutes a separate violation.

In considering the gravity of the offense, these violations are severe and have caused significant harm to students and loss to the Department. As described above, both of these violations demonstrate an extreme lack of fiduciary responsibility. The institution drew federal funding amounts on five separate occasions without supporting disbursements. The repeated nature of this violation is a factor supporting the maximum fine per violation. Although UIU returned a nominal portion (11 percent) of what was illegally procured, nearly 90% of the unsubstantiated funds remain in UIU's possession. Although UIU has acknowledged that it owes these funds to the Department, the institution's delay in returning funds for which it is not eligible and for which it has held since late June/early July (four months) further supports fining the maximum amount for these violations.

With regard to the unpaid credit balances, 157 students failed to receive $753,374 in loan proceeds to pay for living expenses. Of these students, 94 (84% of the students) failed to receive amounts of at least $1,000, 16 students (25% of the students) failed to receive at least $5,000 and 23 students (15% of the students) failed to receive at least $10,000. Given that the students still have not received these funds they are being charged interest on these amounts as part of their Direct Loan balance yet were unable to utilize those funds to pay costs for which the loans were taken. Some of these amounts have been unpaid since mid-May 2023. Of the 157 students owed credit balances yet to be paid, 84 (53.5% of the students) have been waiting between at least 153 to 169 days for these funds. There are 10 students (6% of the students) who have been waiting between at least 123-152 days, 54 students (34% of the students) who have been waiting between at least 92 and 122 days for funds, and the remainder, 11 students (7% of the total), have been waiting at least 60 days for the funds they were owed. UIU's failure to provide students the funds for the purposes for which they were intended both harms students and violates the institution's fiduciary duty. While the institution provided the Department with the required data to demonstrate a significant failure to pay credit balances, they did not provide this information until the Department was alerted to the issue based on complaints. Additionally, these unpaid credit balances represent a recurrence of issues uncovered and purportedly resolved only a month prior. Further, to date, UIU has made no progress to pay any of the outstanding credit balances. The loss to the Department has essentially only been mitigated by the Department's placement of UIU on HCM2 and the current action to terminate the institution's participation in the Title IV programs. Given the severity of these violations a significant fine is warranted; however, given that this fine action is paired with an action to end UIU's eligibility, future harm to the Department will be mitigated, which serves to support a fine per violation at less than the maximum.

Therefore, the Department has set the following fine amounts:

A. For UIU's illegal draw and hypothecation of $43,524 in Direct Loan funds, the Department has set the fine amount at $337,720. This represents $67,544 for each of the five Direct Loan

Dr. Karen Schuster Webb
Union Institute and University
Page 14

drawdowns the UIU made knowing it did not have the corresponding active student disbursement records in the COD system to substantiate the drawdowns.

B. For UIU's illegal hypothecation of Title IV credit balance funds, the Department has set the fine amount at $3,925,000. This represents $25,000 for each of the 157 students who have not received their Title IV credit balance funds.

The $4,262,720 fine will be imposed on November 27, 2023, unless, by that date, we receive a one of the following: 1) a request for a hearing to be conducted by OHA; or 2) a request for reconsideration of the fine action by submitting written material indicating why the fine should not be imposed.

If UIU chooses to request a hearing or to submit written materials, you must write to me at the address in Part I of this letter. If UIU requests a hearing, the case will be referred to OHA. That office will arrange for assignment of UIU's case to an official who will conduct an independent hearing. UIU is entitled to be represented by counsel at the hearing and otherwise during the proceedings. If UIU does not request a hearing, but submits material instead, the Department will review that material and notify UIU of the amount of the fine, if any, that will be imposed.

IV.

**ANY REQUEST FOR A HEARING OR WRITTEN MATERIAL THAT UIU SUBMITS MUST BE RECEIVED BY NOVEMBER 27, 2023, OTHERWISE, THE TERMINATION AND FINE WILL BE IMPOSED ON THAT DATE.**

If you have any questions or desire any additional explanation of UIU's rights with respect to these actions, please contact Kerry O'Brien of my staff at ▮▮▮▮▮▮▮▮.

Sincerely,

Susan D. Crim, Director
Administrative Actions and Appeals Service Group

Enclosures

cc: Barbara Gellman-Danley, President, HLC, via email at president@hlcommission.org
Randy Gardner, Chancellor, Ohio Department of Higher Education, via email at ▮▮▮▮▮▮▮▮
Stephanie McCann, Associate Vice Chancellor, Ohio Department of Higher Education, via ▮▮▮▮▮▮▮▮
Department of Defense, via osd.pentagon.ousd-p-r.mbx.vol-edu-compliance@mail.mil
Department of Veteran Affairs, via INCOMING.VBAVACO@va.gov
Consumer Financial Protection Bureau, via CFPB_ENF_Students@cfpb.gov