## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| BRITTANY ALON, et al., | : | Case No. 1:24-cv-334 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| UNION INSTITUTE | : | |
| AND UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 20). Plaintiffs filed a Response in Opposition (Doc. 21), to which Defendants filed a Reply in Support (Doc. 23). The parties then filed supplemental briefing on the question of subject matter jurisdiction. (*See* Docs. 33, 35.) This matter is also before the Court on Plaintiffs' Motion to Proceed (Doc. 36), to which Defendants filed a Response in Opposition (Doc. 37). Plaintiffs did not file any reply. Thus, the matter is fully briefed and ripe for the Court's review. For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 20) and **DENIES AS MOOT** Plaintiffs' Motion to Proceed (Doc. 36).

## BACKGROUND

On June 20, 2024, Plaintiffs—a group of present or former students at Defendant Union Institute and University ("Defendant Union")—filed a Class Action Complaint against Defendant Union as well as its president and eight board members (collectively

"Individual Defendants"). (Compl., Doc. 1.) This dispute centers around Defendant Union's financial troubles and the alleged actions or inactions of Defendants, which culminated in the cancellation of classes. (*See id*.) Plaintiffs bring claims for breach of contract, promissory estoppel, tortious interference with contracts, negligent misrepresentation, gross negligent conduct, and negligence. (*Id*.) On October 4, 2024, Defendants responded by filing a Motion to Dismiss for Lack of Subject Matter Jurisdiction or, alternatively, a Partial Motion to Dismiss for Failure to State a Claim against Individual Defendants. (Motion, Doc. 20.)

Defendant Union initiated bankruptcy proceedings on March 14, 2025, in the United States Bankruptcy Court for the Southern District of Ohio. (Notice, Doc. 25, Pg. ID 139-40; *In re Union Institute & University*, No. 1:25-BK-10562 (Bankr. S.D. Ohio 2025)). On April 16, 2025, Plaintiffs—along with the plaintiffs in two related federal lawsuits against the same Defendants—moved the bankruptcy court for relief from the bankruptcy stay and for abandonment of insurance proceeds. (Motion for Abandonment, Doc. 28-2, Pg. ID 100-06.) In seeking this request from the bankruptcy court, Plaintiffs represented that the insurance policy limit of $5,000,000 will likely cover the total aggregate damages against Defendant Union and the Individual Defendants in this matter, as well as the damages in the two related cases. (*Id*.) On July 15, 2025, the bankruptcy court granted this Motion for Relief from Stay to Pursue Insurance Proceeds. (*See* Motion to Proceed, Doc. 36, Pg. ID 257.) Amid these developments, this Court ordered the parties to provide supplemental briefing as to the amount in controversy in this matter. (4/28/2025 Notation Order.)

2

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002); *see also Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).

Plaintiffs assert that the Class Action Fairness Act of 2005 ("CAFA") provides federal subject matter jurisdiction for this matter. (Compl., Doc. 1, ¶ 18.) CAFA allows federal courts to exercise jurisdiction over class actions when three elements are met: (1) the case has minimal diversity of citizenship; (2) the proposed class has at least 100 putative members; and (3) the aggregate amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014). The Sixth Circuit instructs that "CAFA [is] not to be read narrowly, but as a broad grant of jurisdiction in interstate class actions." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017). "Courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Naji v. Lincoln*, 665 F. App'x 397, 401 n.2 (6th Cir. 2016) (cleaned up).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759 (citing *United States v. Ritchie*, 15

3

F.3d 592, 598 (6th Cir. 1994)). A court ruling on a factual attack "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *W6 Rest. Grp., Ltd v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025) (quoting *Cartwright*, 751 F.3d at 759). "A facial attack," in contrast, "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright,* 751 F.3d at 759.

Defendants contest that this Court lacks subject matter jurisdiction under CAFA due to the lack of minimal diversity and the insufficient amount in controversy. (Motion, Doc. 20, Pg. ID 104-06.) The Court considers each argument in turn.

## I.     Minimal Diversity

In order to demonstrate minimal diversity, at least one plaintiff must hold citizenship from a state diverse from at least one defendant. 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege that "at least one member of Plaintiffs is a citizen of a different state from any Defendant." (Compl., Doc. 1, ¶ 19.) Defendants rebut that this amounts to a conclusory allegation unsupported by any further factual allegations about the citizenship of any specific Plaintiff. (Motion, Doc. 20, Pg. ID 104-05.) Since Defendants contest this conclusion without pointing to outside evidence, the Court approaches the question of minimal diversity as a facial challenge. *See W6 Rest. Grp.*, 140 F.4th at 349.

Courts have frequently recognized that a threadbare allegation—such as "at least one member of Plaintiffs is a citizen of a different state from any Defendant"—is too conclusory to sufficiently demonstrate minimal diversity. *See, e.g., Roll v. Upper Peninsula*

*Power Co.*, No. 2:22-CV-224, 2023 WL 2730217, at *1 (W.D. Mich. Jan. 6, 2023); *Petkevicius v. NBTY, Inc.*, No. 3:14-CV-2616, 2017 WL 1113295, at *4 (S.D. Cal. Mar. 24, 2017). The Court would note that Plaintiffs have since pointed towards a document labeled "Plaintiffs-Optins Contact Information List" that includes the states associated with twenty-six Plaintiffs. (Contact List, Doc. 33-3, Pg. ID 248.) However, there is no accompanying affidavit or other form of evidence putting forth the citizenship of Plaintiffs and, notably, this information is lacking from the Complaint. *See Naji*, 665 F. App'x at 400. Therefore, the Complaint—as it presently stands—fails to properly plead sufficient facts to establish minimal diversity of citizenship. *See, e.g.*, *Meersman v. Regions Morgan Keegan Trust*, No. 20-6359, 2021 U.S. App. LEXIS 34770, *3 (6th Cir. Nov. 22, 2021); *El Shaddai v. Knoxville TVA Emps. Credit Union*, No. 2:24-CV-138, 2025 WL 1698114, at *2 (E.D. Tenn. June 17, 2025).

## II. Amount in Controversy

Plaintiffs' Complaint also runs into an amount-in-controversy problem. To begin, the Complaint states that the "amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs" and that "Plaintiffs have a good faith basis to belie[ve] Defendants are insured for at least $5,000,000." (Compl., Doc. 1, ¶ 19.) Defendants point to evidence that there is only $753,374 in loan-related damages, as well as one of Plaintiffs' filings with the bankruptcy court. (*See* Motion, Doc. 20, Pg. ID 105-06; Defendants' Supp. Brief, Doc. 35, Pg. ID 251-54; Response to Motion to Proceed, Doc. 37, Pg. ID 263-64.) As Defendants touch upon matters outside of the pleadings, the Court views Defendants' arguments as largely sounding in a factual challenge to the amount in controversy. Under

5

this framing, "no presumptive truthfulness applies to the [Complaint's] factual allegations" and "the [C]ourt is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Plaintiffs argue that the Complaint includes enough facts regarding the damages sought to make it "more likely than not" that their claims meet the $5,000,000 threshold. (Response, Doc. 21, Pg. ID 115-16.) The Complaint alleges that "a total of $753,374 in outstanding Title IV credit balances . . . were owed to 157 students." (Compl., Doc. 1, ¶ 44; Emergency Action, Doc. 1-3, Pg. ID 50.) To be sure, the Complaint contemplates other potential forms of damages, such as the lack of private loan refunds, interest accruing on loans, costs to complete courses outside of Defendant Union, lost opportunities, pain and suffering, and punitive damages. (Compl., Doc. 1, ¶¶ 17, 45-52.) As Defendants point out, however, there are insufficient allegations to support a conclusion that these additional damages would account for the remaining $4,246,626 in question. (Motion, Doc. 20, Pg. ID 105.) *See, e.g., 3D Tech. Grp., LLC v. Martinez*, No. 3:23-CV-1278, 2024 WL 1342859, at *3 (M.D. Tenn. Feb. 14, 2024) (finding the amount in controversy lacking when the complaint only included conclusory allegations and "no metric to assess the value of damages"); *Stevens v. USA Insulation of Akron*, No. 5:23-CV-1035, 2024 WL 248046, at *2 (N.D. Ohio Jan. 23, 2024); *Roll*, 2023 WL 2730217, at *1; *Waldrop v. Cinemark USA, Inc.*, No. 4:24-CV-321, 2025 WL 1748061, at *3 (E.D. Tex. June 24, 2025); *Kim v. Trulia, LLC*, No. 19-CV-6733, 2021 WL 8743946, at *3-5 (E.D.N.Y. Mar. 31, 2021) (collecting cases). In fact,

rather than meeting their burden of demonstrating the amount in controversy in this case, Plaintiffs' actions in the bankruptcy court tell a different story.

On April 17, 2025, Plaintiffs notified this Court that they had filed a motion in the bankruptcy court for relief from the stay to pursue insurance proceeds. (Notice, Doc. 28.) The specifics are important. Plaintiffs—along with the plaintiffs from two related cases against Defendants—moved for relief from the bankruptcy stay and abandonment of insurance proceeds. (Motion for Abandonment, Doc. 28-2.) In seeking this relief from the bankruptcy court, Plaintiffs represented that the insurance policy limit of $5,000,000 will likely cover the total aggregate damages against Defendant Union and the Individual Defendants in this matter, as well as the damages in two related federal cases. (*Id.* at Pg. ID 164-65.) Notably, Plaintiffs' Motion for Abandonment speaks to the claims against Defendant Union and the Individual Defendants. (*Id.* at 161-62.)

Faced with this discrepancy, Plaintiffs do not provide adequate reasoning as to how their Complaint originally sought more than $5,000,000. (*See* Defendants' Supp. Briefing, Doc. 33.) Subject matter jurisdiction is to be determined at the time the Complaint was filed. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). While "subsequent events that reduce the amount below the statutory requirement do not require dismissal," the same is not true for "subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993). In *Jones*, the Sixth Circuit addressed a situation in which the plaintiffs had revealed in their brief that "the amount in controversy is actually less than [the jurisdictional requirement]." *Id.* at 183. As "no

7

subsequent event occurred to reduce the amount in controversy," the Sixth Circuit concluded that "this can only mean that the plaintiffs' claims never satisfied the jurisdictional requirement." *Id*. The Sixth Circuit therefore held that the district court lacked subject matter jurisdiction over the matter. *Id*. Other courts have since applied similar reasoning in comparable situations. *See, e.g., Poplar v. KKI, LLC*, No. 3:04-CV-426, 2005 WL 2739158, at *2 (W.D. Ky. Oct. 21, 2005); *Pro. Serv. Indus., Inc. v. Dynamic Dev. Co., LLC*, No. 14-CV-6363, 2018 WL 3389705, at *5 (N.D. Ill. July 12, 2018); *Nisenbaum v. Nisenbaum*, No. 20-CV-841, 2021 WL 2634526, at *2 (D. Ariz. Apr. 29, 2021).

Accordingly, Plaintiffs' revelation in the bankruptcy court further comports with a finding that subject matter jurisdiction never attached in this case to begin with due to an inadequate amount in controversy. *Jones*, 2 F.3d at 183 ("[L]ack of the jurisdictional amount from the outset—although not recognized until later—is not a subsequent change that can be ignored.") (quotation omitted). Although Defendants opposed Plaintiffs' Motion to Proceed on the grounds that "[b]y their own admissions, Plaintiffs are only seeking to recover what is available under the [insurance proceeds]," Plaintiffs did not file any reply to counter this argument. (Response to Motion to Proceed, Doc. 37, Pg. ID 263-64.)

For all these reasons, the Court finds that the amount in controversy in this matter does not exceed the $5,000,000 requirement under CAFA. The Court therefore lacks subject matter jurisdiction to entertain this action.

III.     **Request for Leave to Amend**

In the event the Court finds pleading inadequacies as to minimal diversity or the amount in controversy, Plaintiffs seek leave to amend their Complaint. (Response, Doc. 21, Pg. ID 114, 116.) However, Plaintiffs have not provided a proposed amended complaint. "The problem with the lack of a motion or proposed amendment is that without viewing the proposed amendment, it is impossible for the district court to determine whether leave to amend should [be] granted." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2018) (cleaned up); *see also Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("A request for leave to amend almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend.") (cleaned up). Thus, for these reasons and in light of the preceding analysis, the Court will not grant Plaintiffs' cursory request for leave to amend.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1) Defendants' Motion to Dismiss (Doc. 20) is **GRANTED**;

2) This matter is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

3) Plaintiffs' Motion to Proceed (Doc. 36) is **DENIED AS MOOT**; and

4) This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND